Our next case this morning is United States v. Roosevelt Dahda, No. 19-3285. Mr. Fishman, you may proceed. Thank you, Your Honor, and may it please the Court. Robert Fishman, on behalf of Roosevelt Dahda, who I will refer to primarily by his first name in order to distinguish his cases from his brothers and co-defendants, Los Dahda. I want to – I usually take these things in order, but I'd like to jump ahead to the third issue that we raised on appeal because I have a couple simple but important points to make about that, and I'll back up and start with the first issue. The point on the third issue, this is the 33-month variance based on obstruction with respect to co-defendant Sadie Brown. I said in our opening brief that the claim raised before this Court is subject to plain error review, but I'm happy to report that I agree with the government on that question, that the issue actually was preserved and properly raised in Roosevelt's sentencing pleadings, and the government cites the correct one. It's volume one, page 449. So it is an abuse of discretion standard of review, not plain error, and when it comes to the actual question of the error itself as opposed to the reputation of the Court and those fourth or fifth Ilana factors, I'm not sure that the standard of review makes much difference because the error in settling on a 33-month variance I think is indisputable, frankly. The Court at Roosevelt's original sentencing identified one reason and one reason alone for a 33-month variance, and as I'm sure the Court is aware, it is because Ms. Brown, by refusing to cooperate with the government, did not qualify for a safety valve reduction in her sentence. And the Court said, if Ms. Brown is going to serve another 33 months, I don't see why you shouldn't either, Roosevelt, because basically it's your fault. At resentencing, the District Court said nothing different or additional in support of the 33-month variance. On the contrary, the Court said, I've already explained myself, I've already been affirmed by the Tenth Circuit, so 33 months it is. And as we explain, that was error because Ms. Brown entered into a plea agreement with the government following her sentencing, and she was no longer subject to an additional 33 months for failing to have cooperated. And so it was clear error, in my view, for the Court to rely on that fact in resentencing Roosevelt. It's the same judge. The Court either was or should have been aware of the fact that Ms. Brown's sentence had materially changed. And I think that requires reversal, at least on the, of course, on the variance issue. Counsel, let me ask you this question, because I've had a real problem with trying to separate a direct appeal when this was, you know, remanded to the District Court. I can see you're having trouble hearing. Can you hear me all right now? I'll pay close attention. Just fake it then. All right, well, I'm having trouble understanding that this was a remand, and the issue of the 33 months was determined in the first case. Now we have a big discussion and the Court redoing. Why isn't this, why shouldn't this be here on a 2255 rather than a direct appeal? What we've done here in this case, and may not all be your fault, we've taken a sentencing question and made it into a really full blown trial. When a way I read the remand from this Court, it was, it appeared to be one issue. I mean, I could be, that's just the way looking at it, but it struck me, and most of those issues could easily be raised in a 2255, but they've already been raised. Yes and no. The issue that was raised, the issue that was raised before this Court, the first time around by Roosevelt was basically, there was no evidence that I obstructed. The Court is wrong to blame me for Ms. Brown's non-cooperation. This Court rejected that argument. My position now, and my position now is that's settled. I'm not disputing that. But when you have a change in facts between the time of both the original sentencing and this appeal, and I'm sorry, the original appeal and the remand, I don't see any reason to say, or really logical basis for saying, the resentencing cannot encompass reconsideration of a question that has changed factually, even though the remand order itself may not speak to this specific question. And the reason I say that is the law that the party cites in a different context, but it's the same law, the mandate rule, law of the case, gives a court discretion to expand the scope of resentencing on remand. And the Court did that. It would be a different argument. I think I would still be making the argument, but it would be a different argument if the Court said on remand, look, Roosevelt, I'm not entertaining arguments about Sadie Brown and 33 months. That's been affirmed. It's outside the scope of the limited remand for the Court of Appeals, but the Court didn't do that. It said, I'm imposing 33 months and I'm doing it for the same reason I did before. The Court is already addressing the issue on the merits, Judge Baldock, and I think in that context, it makes no sense to say, in effect, and you can do whatever you'd like, Judge, because it's not going to be reviewed on appeal. Roosevelt can take it up in a 2255 with all the procedural hurdles that that entails, without counsel, etc., etc. It's also, Your Honor, an argument that the government has not made. The government has not said this is not properly being raised. The government's argument is the decision was right the first time and the 33 months was right the second time as well. So I think we're here on the merits, properly so. And you have a fact, the only fact relied on by the district court for 33 months, and it just is not true. It's not valid anymore, even though it was a couple years ago. Isn't it technically, and maybe I'm wrong about this, but isn't it technically only a six-month sentence, six-month variance? Because she went, what's now, the guideline range is now, what, 108 to 135? Yes, Your Honor, but I- And then she, so technically, it's six months over the top of the guideline range. Well, as a question of pure mathematics, yes, but the court said, I'm giving you 108 months on the guideline, and I'm going another 33. She did say that? Yes. Okay. Mr. Fishman, one more thing on this issue. Why wouldn't it be appropriate to look at it this way, and that is to ask how Ms. Brown's resentencing would have made Mr. Dada's obstructive conduct any less worthy of punishment? I mean, what difference does it make? He interfered, and that fact hasn't changed at all. That's true, and I conceded that in our opening, and I made the concession clear again in our reply. The argument is not, there is no basis for any variance whatsoever. That issue was decided. The court has said there is a basis for a variance. That's your point, Judge Matheson. My point is, okay, fine, you're going to punish him for his conduct with respect to Ms. Brown. When you fix a number in doing that, it has to be one that is legitimate. You know, it reminds me of what you hear a lot in employment law cases. You can fire someone for no reason, but you can't fire someone for the wrong reason, and I would say, as applied in this context, you can impose a variance. You can punish my client for obstruction, but when you settle on the extent of that punishment, it has to be for a legitimate rationale. There has to be a reason for it, and the only reason identified is an incorrect one. So it is, I'm not arguing a remand to resentence without a variance. I'm saying remand, you're going to vary because you found him to have obstructed justice, and that is no longer a question in this case. Decide on the punishment, and when you explain your punishment, I mean, I think the court may be able to do what the government argues. Say you're outraged that the conduct was terrible, and I'm very, very troubled by this, ergo 33 months. I thought the court, and maybe I don't want to keep going on this, but I thought the court did indicate that this was essentially, he could have had an obstruction enhancement, and it would have increased his guideline range by two, and he didn't have one because of the timing of all this and how it happened. And so the fact is, he still could have had an obstruction enhancement based on that prior conduct. There's nothing wrong about her rationale on that. Nothing's changed about his prior conduct and whether it would have been sufficient for an enhancement. Has it had it or would it? I mean, the distinction that I'm drawing is between finding obstruction and settling on the punishment for that obstruction. I'm challenging the latter and not the former, and when it comes to the latter, there's only one reason given for 33 months. It's because of the amount of time Sadie Brown was doing it, and it's just not true. Oh, okay. I see your point. So to jump back from the start to the start on issue number one, whether the opinion in Los Dada one is law of the case. I set out all the arguments in our brief as to why it isn't law of the case. First and foremost, Los Dada and Los Dada one and Ellis deal with different legal questions. That's the that's the primary argument. And so what I need to do in three minutes is address Los Dados two, which came out on January 8th and said Los Dada one is law of the case for brother Los. Because it deals with a different legal issue than Ellis. And number two, because the result in Los Dados and Ellis are the same. They're both sentenced under B1C to a maximum 20 year sentence. Our briefs explain in detail, I think, why the legal issues are not the same. I do want to address quickly the sort of no harm, no foul argument. It is true that Ellis was resentenced under B1C, which carries a maximum of 20 years. It is also true that Mr. Ellis was pro se at his sentencing, and all he argued was for a 20 year cap, which to Mr. Ellis would be a great result because he was doing life without parole. He never argued for a five year cap under B1D. It's not addressed by the court in Ellis. The court in Ellis says nothing about it. And I will add that under this court's precedent, Chernobyl and Los Dados one itself. Ellis is just wrong on that. The law is clear in the 10th Circuit that when you don't have a jury finding as to quantity, five year is max, because there is no basis for concluding that the crime involved more than, in this case, 50 kilograms under B1D. And so you're stuck with B1D. What I want to say that has not been argued, those are the substantive arguments, happy to answer any questions you have on that. What I do need to explain to the court why you should not say, granted, Los Dados two is unpublished. I know the court can say we're not bound to follow the court, follow the panel's decision in that case, but we find the reasoning persuasive. With all due respect to the panel in Los Dados two, the reasoning is incorrect. But I don't want to lay that, I don't want to blame the panel for that. The fact is Roosevelt's brother, Los, was pro se on appeal. I've read his briefs in Los Dados two. So I think you really, I hope and encourage you to take a look at this law of the case question with fresh eyes and anew and realize that the argument's been rejected by a pro se litigant. I think it should not be rejected in Roosevelt's case. And I am out of time. So you're out of time. Could I just ask a quick question on the last, the issue on the special condition, supervised release, and in particular the condition that he'd be subject to search of his electronic devices? And my question there is, what do you think is the strongest case authority that the district court needed to make particularized findings to impose that condition? I think the law does not require the sort of particularized findings that we are, I'm sorry, I'm sorry. Well, I think Burns, we cite in our reply brief, says you need particularized findings when you impose a condition of supervised relief that infringes on a fundamental liberty interest. And our argument, of course, is the right to be free from search, unreasonable search and seizure is a fundamental liberty interest. And you need to be specific when you impose a condition restricting that. All right. I understand your response. Thank you. Ms. Capua. Yes, good morning, your honors. May it please the court, Carrie Capua for the United States. If it's okay with the court, I think I'll start on the last point that Judge Matheson raised. Sorry, my lights just went out in the office automatically. That this is, the search condition does not deal with a fundamental liberty interest. So particularized findings were not required here. Examples of a fundamental liberty interest, according to this court, are familial association, child rearing, marital privacy, bodily integrity. But it has not a search of somebody under supervised release has not been deemed a fundamental liberty interest. And I will add here that the search was required to be based on reasonable suspicion to be conducted in a reasonable manner at a reasonable time. And so that there were protections here on the defendant's liberty. In addition, it was reasonably related to the factors set forth in 3553A because the underlying conviction and offense involved a wiretap and drug distribution. And the defendant had cell phones that he used to facilitate those crimes. And so here a search of his electronic devices, which is in particular what he objected to during the sentencing, would be reasonably related to the offense. Counsel, let me just I'm not understanding why a Fourth Amendment interest, which is a privacy interest, is not a fundamental liberty interest. I mean, oftentimes when it's child rearing and some of these others, we're talking about unenumerated constitutional interest. But here we have the Fourth Amendment, for goodness sakes. Why isn't this a fundamental interest? Yes. I believe it's because the this defendant is under supervised release. So he's continuing his sentence, but not in custody, rather under the supervision of probation, so that there's already a limitation on on basically his liberty that is continuing in this different form of custody, which is supervision. And that is why the search condition here, a search condition can't be placed in every single case. That's why it has to go back to the standard in 18 U.S.C. 3583 D1 through D3, and it has to meet the standards of being reasonably related to the crime. It can involve no greater deprivation of liberty than is reasonably necessary for the purposes of 3553A, and it has to be consistent with pertinent policy statements in the sentencing guidelines, which the government has argued have been met here. And the case law from this court is that a search condition as part of supervised release only requires the district court to make a generalized statement explaining its reasons, not particularized statement, which would be in those other situations that I enumerated. I don't want to dwell on this too long, but best case for what you just said. Let's see, Your Honor. The Hahn case discussed when a generalized statement of reasoning is needed. I did not jot down in my notes the familial association in those other cases, so I don't know those off the top of my head. I'm sorry, but Hahn and Hanrahan would probably just have the general standards needed for supervised release conditions. Counsel, let me ask you, were you trial counsel below when all of the proceedings happened in this matter? I was not, Your Honor, but I did handle the first round of appeals, so I was around for the data one. Let me ask you this then, because what we have now before the court appears to me to be the entire resentencing under the first case. And did anybody ever question what was the reason for the remand or what was the basis of the remand? Because we're doing a whole complete resentencing in this case. That just doesn't seem right to me. It looked to me like Judge Bacharach specified what the issue was instead of entirely the whole resentencing. And I know that the court went on, but nobody objected to it or raised the issue before the district court. Your Honor, the government did push back at times. Both there was a lot of litigation leading up to the resentencing. And then did you raise it here in the brief here, Your Honor? No, Your Honor. In this case, did anybody raise it for us to look at? I'm trying to think through my brief. I don't think so other than issue one, which is defendant's request to be sentenced under 841B1D. So as to that specific issue, the government did argue that the law of the case does control that one issue. I don't believe that in my brief here I made that argument as to every other issue except for the marijuana drug quantity calculation, which was the specific issue that was remanded after the first direct appeal. So I would urge, Your Honors, to follow the other panel in Los Dada 2 that found that the law of the case controls the issue of the statutory sentence for count one, which was the conspiracy count. And that panel did find that Dada 1 was the law of the case, that there was no constitutional violation in sentencing the Dadas under 841B1C, because the jury had found that the conspiracy involved more than 1,000 kilograms of marijuana. The panel in Los Dada 2 also noted that while a lien and barrage would be controlling authority in terms of speaking of a way to get around the law of the case doctrine, there's only very narrow circumstances where this court will do that. And one of those is when controlling authority subsequently has been issued that makes the prior decision contrary to law. But as the other panel in Los Dada 1 found, both a lien and barrage are controlling authority, but they're not subsequent. They preceded the Dadas' sentencing the first time and the first round of appeals, direct appeals. And the panel's decision in Ellis from this court would not be controlling authority. It would be just a subsequent decision by this same court. And one panel of this court cannot overrule another panel of this court. It would require en banc reconsideration, which did not occur here. So I would urge this court to similarly find that Dada 1 is law of the case and that this defendant was properly and lawfully sentenced under 841B1C. The only other point I wanted to raise at this point, unless the court has further questions, is just the 33-month variance. And just to focus on really the point that Judge Matheson raised, which was there was a change in Sadie Brown's circumstances. And she was resentenced pursuant to an agreement that she and the government reached as to a new sentence. That doesn't change the behavior that Roosevelt Dada engaged in, which the district court described as obstructive. It deprived not only the chance for Ms. Brown, going back three or four years, to proffer with the government and gain an advantage and a reduction in her sentence, but it deprived the government of having the information that she could have provided years ago. So the obstruction, while it certainly hurt her, it also deprived the government of information that it could have used at that time. And so this court previously found that in Dada 1, that the 33-month variance was well within the district court's discretion. And I would urge this court to similarly affirm that variance. There are no further questions. I have one question. You're wanting us to affirm on the basis of Dada 1 or what you're arguing now? Well, because I did not make that argument in my brief. I think I'll just ask that this court affirm because it is within the district court's discretion and that Mr. Dada's obstructive conduct and behavior justifies that 33-month variance. Thank you. Thank you. Unless there are further questions, I will yield the rest of my time and ask this court to affirm the resentencing. Thank you, counsel. I believe, Mr. Fishman, you don't have any more time, so we will consider the case submitted. Counsel are excused. We thank you for your arguments this morning.